UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | ) | |
| KEVIN LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-11544-JLT |
| | ) | |
| WEST ROXBURY DISTRICT COURT, | ) | |
| JUDGE MCKINLEY, in his individual capacity, | ) | |
| and COURT CLERK, in his individual capacity. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION ON DEFENDANTS'
MOTIONS TO DISMISS AND PLAINTIFF'S MOTIONS TO AMEND**
[Docket Nos. 12, 14, 16, 26, 37]

August 22, 2013

Boal, M.J.

Pro se Plaintiff Kevin Lewis ("Lewis") brings this action against the West Roxbury

District Court ("WRDC"), Judge Robert McKenna, Jr. ("Judge McKenna"),[1] and an unnamed

Court Clerk (collectively "Defendants").   Lewis alleges that the Defendants violated his

constitutional right to due process in violation of 42 U.S.C. § 1983 and committed "torts of

negligence and recklessness."   Defendants have filed separate motions to dismiss Lewis'

complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).   Docket Nos. 12, 14, 16.

Lewis has filed two motions for leave to amend his complaint.   Docket Nos. 26, 37.   For the

---

[1] Lewis listed a "Judge McKinley" as a defendant in this case.  However, the text of his complaint, the parties' briefs, and Lewis' first motion to amend indicate that Lewis intended to sue Judge Robert McKenna, Jr.  This Court recommends that Lewis' motion to amend be granted to the extent it seeks to fix this error.  Accordingly, this Court refers herein to Judge McKenna for the sake of clarity.

reasons stated herein, this Court recommends[2] that the District Court grant Defendants' motions

to dismiss.  This Court further recommends that the District Court (1) grant in part and deny in

part Lewis' first motion for leave to amend; and (2) deny Lewis' second motion for leave to

amend.

I.      PROCEDURAL BACKGROUND

Lewis filed this action on August 17, 2012.  Docket No. 1.  On December 17, 2012,

Defendants filed their respective motions to dismiss the complaint.  Docket Nos. 12, 14, 16.  On

February 19, 2013, Lewis filed an opposition to Defendants' motions.  Docket No. 28.  That

same day, Lewis also filed a motion for leave to amend his complaint.  Docket No. 26.  On

March 4, 2013, Defendants filed a joint reply brief and a partial opposition to Lewis' motion to

amend.  Docket Nos. 32, 33.  On March 11, 2013, Lewis filed supplemental oppositions to

Defendants' motions to dismiss.  Docket Nos. 35, 36.  On March 20, 2013, Lewis filed a second

motion for leave to amend his complaint.  Docket No. 37.  Defendants opposed that motion on

March 29, 2013.  Docket No. 40.

II.     FACTUAL BACKGROUND[3]

In January 2012, Lewis faced unspecified criminal charges.  Compl. at p. 1.[4]  On January

27, 2012, he dismissed his first criminal defense attorney because he believed that she wanted

him to accept a plea bargain without conducting adequate pretrial discovery or motion practice.

Compl. at ¶ 2.  On February 28, 2012, Lewis received new counsel whose performance "was

---

[2] On March 8, 2013 and August 15, 2013, the District Court judge assigned to this case referred the subject motions to this Court for a report and recommendation.  Docket No. 34, 43.

[3] For purposes of the present motions to dismiss, this Court takes as true all well-pleaded allegations and draws all reasonable inferences in Lewis' favor.  See Morales-Tañon v. Puerto Rico Electric Power Authority, 524 F.3d 15, 17 (1st Cir. 2008).

[4] "Compl. _" refers to Lewis' complaint.  Docket No. 1.

better but still below the standard of a zealous advocate" because she "never bothered to set up

an account for collect calls nor was she forthcoming with automatic discovery."  Compl. at ¶ 3.

Lewis believed that no one in the entire courtroom seemed to have any respect for his due

process rights, which "compelled" him to become more involved in his case.  Compl. at ¶ 4.

The Court Clerk allegedly failed to accurately record the history of Lewis' case,

especially after March 29, 2012.  Compl. at ¶ 5.  On March 29, 2012, Lewis rejected a plea offer

and Judge Miller set a trial date of April 26, 2012, with a "compliance hearing" to be held on

April 12, 2012. Compl. at ¶¶ 5-6.  There is no record of any compliance hearings on the docket.

Compl. at ¶ 5.

On April 26, Judge Desmond was on the bench and "once again the [C]ommonwealth

was not ready."  Compl. at ¶ 6.  Lewis alleges that Judge Desmond had a "pre-disposition to

dismiss for non-compliance."  Compl. at ¶ 7.

On May 11, 2012, Judge Saranson was on the bench and "[o]nce again the

[C]ommonwealth was not in compliance."  Compl. at ¶ 7.  Lewis mentioned to his attorney that

she should move to dismiss the case, but she did not do so or inform the court about Judge

Desmond's "pre-disposition to dismiss" because "she didn't think it was the right judge."

Compl. at ¶ 7.  Lewis "conceded to her unwillingness to [r]ock the [b]oat" and Judge Saranson

"then scheduled another c[o]mpliance hearing for 5/25/12 and a Motion/Trial for 6/6/12."

Compl. at ¶ 7.

On May 14, 2012, Lewis requested copies of his docket entries in order to prepare for the

June 6, 2012 court date.  Compl. at ¶ 8.  The Court Clerk allegedly ignored Lewis' request and

lied to his wife by saying that she mailed the documents to Lewis already.  Compl. at ¶ 8.  On

June 6, 2012, Lewis asked his attorney to obtain copies of the docket sheets.  Compl. at ¶ 9.  His

attorney responded that Lewis "couldn't do that" but after Lewis "stated federal and local laws to her," she "follow[ed] through with [his] request." Compl. at ¶ 9.

On June 6, 2012, the Commonwealth "violate[d] another court order for noncompliance." Compl. at ¶ 10. Judge McKenna ordered the District Attorney "to have the required discovery in one hour or the case would be dismissed." Compl. at ¶ 10. Judge McKenna ignored Lewis' request to obtain the court colloquy from April 26th. Id. That colloquy "would have revealed Judge Desmond's pre-disposition to dismiss due to the negligence of the D.A." Compl. at ¶ 11. The Commonwealth produced a copy of the stolen car report, but the requested "inventory report lacked authenticity" as it lacked a signature and letterhead. Compl. at ¶ 12. The Commonwealth also failed to produce a statement from the owner. Compl. at ¶ 12.

Also on June 6, 2012, Lewis attempted to "exercise [his] rights according to the rules of the court in regards to plea bargaining." Compl. at ¶ 13. At that time, the Court Clerk told the judge, "we've been down this road before as if to imply that [his] argument was frivolous and vexatious dilatory tactic." Compl. at ¶ 13. The Clerk's comment caused the judge to become "warped by [p]rejudice and manifestly biased towards [Lewis]." Compl. ¶ 14. The Clerk's behavior and the Judge's reaction left Lewis "in a state of shock." Compl. at ¶ 14.

III.    DEFENDANTS' MOTIONS TO DISMISS

Lewis brings claims against the Defendants under Section 1983 and common law tort theories.[5] Defendants move to dismiss on grounds that the complaint fails to state any viable claims, and that suit is foreclosed by various immunity doctrines.

---

[5] Lewis makes a passing request for unspecified injunctive relief. See Compl. at p. 1. However, in a subsequent motion, discussed below, he asks to dismiss that request.

A.      Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  Pro se pleadings are to be liberally construed.  Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1991).  While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions.  Iqbal, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'") (citations omitted).  Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of misconduct.  Iqbal, 556 U.S. at 679.

The proper vehicle for challenging a court's subject matter jurisdiction via a sovereign immunity defense is Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Fenton v. University of Mass., No. 10-30007, 2010 WL 4027737, *1 (D. Mass. Sept. 10, 2010) (citing Valentin v.

Hospital Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001)).  In reviewing a motion to dismiss under

Rule 12(b)(1), a court must credit the plaintiff's well-pleaded factual allegations and draw all

reasonable inferences in the plaintiff's favor.  Merlonghi v. United States, 620 F.3d 50, 54 (1st

Cir. 2010).  The party invoking federal court jurisdiction has the burden of proving its existence.

Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

  B.  Analysis

    1.  The West Roxbury District Court

Lewis alleges that the WRDC violated his constitutional right to due process by acting

pursuant to a municipal policy and practice of frequently rotating judges.  See Compl. at p. 4.

WRDC moves to dismiss primarily on the basis that it is not a "person" under Section 1983 and

that it is entitled to immunity.  WRDC Mem. at 6-10.[6]  Lewis responds that municipalities are

persons under Section 1983[7] and, as such, may be liable for establishing or implementing a

custom or policy that is a moving force behind a constitutional deprivation.  See Pl. Opp. at 3-4.[8]

    a.  *A "Person" Under Section 1983*

Section 1983 is a vehicle through which individuals may sue certain persons acting under

the color of state law for deprivation of federally assured rights.  Gagliardi v. Sullivan, 513 F.3d

301, 306 (1st Cir. 2008). Specifically, Section 1983 states:

---

[6] "WRDC Mem. _ " refers to the WRDC's Memorandum of Law in Support of its Motion to Dismiss.  Docket No. 13.

[7] Lewis correctly notes that a municipality may be liable under Section 1983 for enacting or implementing a policy or custom that infringes on a plaintiff's constitutional rights.  See Pl. Mem. at 3-4 (citing Monell v. NY City Dep't of Soc. Servs., 436 U.S. 658 (1978)).  Here, however, the WRDC is a trial court within the Massachusetts court system and is neither a municipality nor an instrumentality of a municipality.  Thus, Monell and its progeny are inapposite.

[8] "Pl. Opp. _" refers to Lewis' Memorandum of Law in Support of Opposition to Defendants' Motion to Dismiss.  Docket No. 29.

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

"A claim under Section 1983 has two essential elements.  First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law."  Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997).

A state and its agencies are not "persons" within the meaning of Section 1983. Brown v. Newberger, 291 F.3d 89, 92 (1st Cir. 2002) (upholding dismissal of claims against Massachusetts trial court).  A state court is an agency of the state and therefore, is not a "person" who may be sued under Section 1983.  See Toro v. Rhode Island, No. 08-064S, 2008 WL 2973035, *2 (D.R.I. Aug. 1, 2008); Marcello v. Maine, 464 F. Supp. 2d 38, 43 (D. Me. 2006); Ray v. New Jersey, 219 F. App'x 121, 124 (3d Cir. 2007).

Accordingly, this Court finds that Lewis has failed to state a claim against the WRDC under Section 1983.

b.      *Sovereign Immunity*

The Eleventh Amendment to the U.S. Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. Amend. XI.  The Eleventh Amendment also bars suits brought for money damages in federal court against a state by its own citizens.  Hans v.

7

Louisiana, 134 U.S. 1 (1890).   In the absence of consent or abrogation,[9] the Eleventh

Amendment proscribes a federal court case in which the state or one of its agencies or

departments is the named defendant.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89,

100 (1984).  This immunity extends to any entity that is an "arm of the state."  Wojcik v.

Massachusetts State Lottery Comm'n, 300 F.3d 92, 99 (1st Cir. 2002).

        In Fresenius, the First Circuit set forth a two-pronged test for determining whether a

public entity is entitled to Eleventh Amendment immunity.  Fresenius Med. Care Cardiovascular

Res., Inc. v. P.R. & Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 68 (1st Cir. 2003).  The

first prong asks whether the state has clearly structured the entity to "share its sovereignty."  Id.

If the factors assessed in evaluating the structure of the state-related entity are inconclusive, then

the second prong assesses the risk that damages will be paid from the public treasury.  Id.  "This

analysis focuses on whether the state has legally or practically obligated itself to pay the entity's

indebtedness."  Id.

        The Massachusetts state trial court system, to which the WRDC belongs, is a product of

state statute.  M.G.L. ch. 211B § 1.  The Massachusetts trial court system is funded by the

Commonwealth.  See M.G.L. ch. 29A, §1.  Federal courts have routinely found that state courts

are arms of the state for purposes of the Eleventh Amendment.  See Simmons v. Sacramento Cty.

Super. Ct., 318 F.3d 1156, 1161 (9th Cir. 2003); Landers Seed Co. v. Champaign Nat'l Bank, 15

F.3d 729, 731-32 (7th Cir. 1994).  The WRDC is therefore an arm of the state.

        It is not clear from the complaint whether Lewis intended to assert a tort claim against

---

        [9] Congress did not abrogate Massachusetts' sovereign immunity by enacting Section
1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989); Quern v. Jordan, 440
U.S. 332, 334. Massachusetts has not consented to suit in federal courts for the types of claims
asserted here.  See Coggeshall v. Massachusetts Bd. of Registration of Psychologists, 604 F.3d
658, 662 (1st Cir. 2010); Irwin v. Comm'r Dep't of Youth Sers., 388 Mass. 810, 821 (1983).

the WRDC.  Lewis briefly mentions the "torts of negligence and recklessness" and identifies

purported duties owed to him by Judge McKenna and the Court Clerk.  Compl. at pp. 1, 4.  He

does not, however, provide any further specifics about a tort claim against WRDC.

The Massachusetts Tort Claims Act operates as a limited waiver of sovereign immunity.

M.G.L. ch. 258, §§ 2, 3.  It is well established, however, that "[a] state's constitutional interest in

immunity encompasses not merely whether it may be sued, but where it may be sued."  Rivera v.

Com. of Mass., 16 F. Supp. 2d 84, 87 (D. Mass. 1998) (citation omitted); see also Caisse v.

DuBois, 346 F.3d 213, 218 (1st Cir. 2003).  Importantly, the "language [of Section 3 cited

above] does not refer to actions in federal court, hence failing to meet the strict standard of

eleventh amendment waiver…"  Id.  As a federal court, therefore, this Court lacks subject matter

jurisdiction over claims against the Commonwealth and its agencies, such as the WRDC, under

the Massachusetts Torts Claims Act.[10]

Accordingly, this Court finds that the WRDC is entitled to sovereign immunity, and the

claims against it should be dismissed.

> 2.      Judge McKenna

Lewis alleges that Judge McKenna acted with extreme prejudice and bias toward him,

thereby depriving him of his constitutional rights to due process and a fair trial.  See Compl. at p.

4.  Judge McKenna moves to dismiss primarily on the grounds that he is entitled to judicial

---

[10] To the extent that Lewis states claims against the individual Defendants in their official capacity, such claims must be read as having been brought against the Commonwealth.  Rivera, 16 F. Supp. 2d at 86; Anderson v. Heffernan, No. 12-12173-FDS, 2013 WL 1629122, *4 (D. Mass. Apr. 9, 2013).  Accordingly, this Court lacks subject matter jurisdiction over claims against the individual Defendants in their official capacities.

immunity.  JM Mem. at 5-8, 10.[11]  Lewis argues that judicial immunity is improper because he

asserts claims against Judge McKenna in his personal capacity.  Pl. Opp. at 5.

A judge is absolutely immune from suit for money damages involving actions taken in

his/her judicial capacity.  Mireles v. Waco, 502 U.S. 9, 9 (1991) (collecting cases).  There are

only two sets of circumstances in which a plaintiff may overcome judicial immunity.  Id.  First, a

judge is not immune from liability for nonjudicial actions, i.e., actions not taken in a judicial

capacity.  Id. (citing Stump v. Sparkman, 435 U.S. 349, 360 (1978)).  A judicial act does not

become less judicial by virtue of an allegation of malice or corruption of motive.  Forrester v.

White, 484 U.S. 219, 227 (1988).  Second, judicial actions taken in the complete absence of all

jurisdiction deprive a judge of absolute immunity.  Stump, 435 U.S. at 356-57.  Neither

circumstance applies here.

Lewis' allegations pertain solely to Judge McKenna's actions and omissions while

discharging his judicial responsibilities.  The complaint identifies Judge McKenna's decisions

regarding "compliance hearings" before the court, his failure to dismiss the case sua sponte, and

his reaction in response to the Court Clerk's comment.  Compl. ¶¶ 10-14.  Lewis' allegation that

Judge McKenna harbored a prejudicial motive, even if true, does not change the judicial nature

of his actions.

Furthermore, there is no basis to find that Judge McKenna's judicial actions were taken

in the complete absence of all jurisdiction.  Even construing the allegations in his favor, this

Court finds that Lewis challenges Judge McKenna's actions that were squarely taken within his

judicial authority, namely the supervision of a criminal case before him.

---

[11] "JM Mem. _" refers to Judge McKenna's Memorandum of Law in Support of His
Motion to Dismiss.  Docket No. 15.

Accordingly, the Court finds that Judge McKenna is entitled to judicial immunity, and the case against him should be dismissed. [12]

### 3.   The Court Clerk

Lewis alleges that the Court Clerk's conduct denied him meaningful access to the courts and deprived him of his right to due process.  Compl. at p. 4.  The Court Clerk moves to dismiss primarily on the grounds that she is entitled to quasi-judicial immunity.  CC Mem. at 5-12, 14-16.[13]

The doctrine of quasi-judicial immunity provides absolute immunity for those who perform tasks that are inextricably intertwined with the judicial function.  Nystedt v. Nigro, 700 F.3d 25, 30 (1st Cir. 2012).  For this purpose, judicial function is defined as the adjudication of disputes between parties.  Id. at 31 (citing Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435 (1993)).  Several sessions of this Court have extended quasi-judicial immunity to judicial employees, including court clerks, where they have performed such tasks.  See McLarnon v. United States, No. 09-10049-RGS, 2009 WL 1395462, *4 (D. Mass. May 19, 2009); Andre v. Moriarty, No. 11-40009-FDS, 2011 WL 1456773, *7 (D. Mass. Apr. 4, 2011); Okereke v. Wood, No. 10-11154-MLW, 2013 WL 697059, *2 n. 2 (D. Mass. Feb. 24, 2013).

Here, Lewis' allegations all relate to the Court Clerk's acts and omissions while assisting WRDC judges during Lewis' criminal proceedings.  Specifically, Lewis alleges that the Court Clerk stated "we've been down this road before" when he attempted to "exercise his rights"

---

[12] WRDC asserts that it is entitled to judicial immunity.  See WRDC Mem. at 9-10. Courts in this circuit have recognized that judicial immunity protection extends to the courts. See Marcello, 464 F. Supp. 2d at 43-44 (citing Radion v. New Hampshire Supreme Court, 84 Fed. App'x. 105 (1st Cir. 2003)).  Accordingly, the claims against WRDC are dismissible on this basis as well.  To the extent Lewis intended to assert claims against the other judges of the WRDC named in the complaint, they too would be entitled to judicial immunity.

[13] "CC Mem. _" refers to the Court Clerk's Memorandum of Law in Support of Her Motion to Dismiss.  Docket No. 17.

regarding plea bargaining.  Compl. at ¶ 14.  He also charges the Court Clerk with failing to record his case accurately and ignoring his request to obtain court documents.  Compl. at ¶¶ 5, 8. In short, Lewis seeks to hold the Court Clerk liable for improperly discharging her duties.  Those duties arise directly from the Clerk's role in supporting the adjudication of cases.  They are inextricably intertwined with the judicial function and, thus, quasi-judicial immunity attaches to the Court Clerk when she performs those duties.

Lewis does not save his claim by stating, in a conclusory fashion, that the Court Clerk "acted in clear absence of her jurisdiction."  Compl. ¶ 3.  Such an allegation does not satisfy the Twombly standard.  As noted above, there is no allegation that the WRDC or Judge McKenna retained improper jurisdiction over Lewis' criminal proceedings.  Because the Court Clerk does not retain any independent jurisdiction of her own, she did not act outside of any jurisdiction.

Accordingly, this Court finds that the Court Clerk is entitled to quasi-judicial immunity. For all of these reasons, this Court recommends that the District Court grant the Court Clerk's motion to dismiss.

## IV.    LEWIS' MOTIONS FOR LEAVE TO AMEND

Lewis has filed two motions seeking leave to amend his complaint.  In his first motion, he seeks leave to: (1) substitute Judge McKenna for "Judge McKinley"; (2) identify Erin Carey as the Court Clerk; (3) amend his claim of "negligence and recklessness" to "negligence pursuant to Mass Tort Claims Act M.G.L.A. 258 s. 2"; (4) include a claim for punitive damages; and (5) eliminate his request for injunctive relief.  Docket No. 26.  Defendants do not oppose items (1)-(3) or (5) in Lewis' first motion.  Docket No. 33 at 2.  This Court therefore recommends that the District Court grant Lewis' motion as to those requests.[14]

---

[14] These amendments are clerical and do not alter the substance of Lewis' claims or restrict the scope of the aforementioned immunity doctrines.

12

Defendants oppose Lewis' request to include a claim for punitive damages.  Id. at 2-3.

Defendants also oppose Lewis' second motion, in which he seeks leave to add the

Commonwealth of Massachusetts as a party to this suit.  Docket No. 37 at 1; Docket No. 40 at 2-

3.

Defendants argue that Lewis' proposed amendments that would include a claim for

punitive damages and add the Commonwealth of Massachusetts as a party would be futile.  A

court may refuse to allow an amendment based on futility.  See Foman v. Davis, 371 U.S. 178,

182 (1962).  The appropriateness of a denial of a motion to amend on the ground of futility

"depends, in the first instance, on the posture of the case."  Hatch v. Dep't for Children, 274 F.3d

12, 19 (1st Cir. 2001).  Where, as here, "leave to amend is sought before discovery is complete

and neither party has moved for summary judgment, the accuracy of the 'futility' label is gauged

by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)."  Id.

Lewis' proposed amendments would be futile.  An amendment that asserts punitive

damages would be futile because Lewis fails to state a claim upon which any relief can be

granted.  Lewis' request to add the Commonwealth of Massachusetts would also be futile

because the Commonwealth is not a "person" under Section 1983 and is entitled to immunity.

Will, 491 U.S. at 65-66; Pennhurst, 465 U.S. at 100.  To the extent Lewis seeks to assert tort

claims against the Commonwealth, as discussed above, those claims are barred in this Court by

the Eleventh Amendment.  Rivera, 16 F. Supp. 2d at 88.

Accordingly, this Court recommends that Lewis' first motion be denied to the extent he

seeks to add a claim for punitive damages.  This Court recommends that Lewis' second motion

for leave to amend be denied in its entirety.

V.      RECOMMENDATION

For the foregoing reasons, this Court recommends that the District Court:

(1)      GRANT Defendants' motions to dismiss Lewis' complaint (Docket Nos. 12, 14,

16).

(2)      GRANT IN PART and DENY IN PART Lewis' first motion for leave to amend

(Docket No 26); and

(3)      DENY Lewis' second motion for leave to amend (Docket No. 37).

VI.     REVIEW BY DISTRICT COURT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any

party who objects to these proposed findings and recommendations must file specific written

objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report

and Recommendation.  The written objections must specifically identify the portion of the

proposed findings, recommendations, or report to which objection is made, and the basis for such

objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court

of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P.

72(b) will preclude further appellate review of the District Court's order based on this Report

and Recommendation.  See Phinney v. Wentworth Douglas Hospital,199 F.3d 1 (1st Cir. 1999);

Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d

343 (1st Cir. 1993).


                                        /s/ Jennifer C. Boal
                                        JENNIFER C. BOAL
                                        United States Magistrate Judge